IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NOPAZZO HINES, | ) |
| PLAINTIFF, | ) |
| v. | ) CIVIL ACTION NO. |
| LINCOLN LIFE ASSURANCE COMPANY OF BOSTON, | ) _____ |
| DEFENDANT. | ) |

## COMPLAINT

Plaintiff Nopazzo Hines ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by Lincoln Life Assurance Company of Boston ("Lincoln Life") in connection with the provision of ERISA-governed disability benefits under a group insurance plan sponsored by Plaintiff's former employer, Wal-Mart, Inc. In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to himself and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys:

## INTRODUCTORY STATEMENT

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a) to secure disability benefits due to Plaintiff through the group insurance policies sponsored by Walmart, Inc.

2. The Plaintiff seeks all benefits to which he may be entitled should this Court determine he is "disabled," including long-term disability benefits under policies issued or administered and underwritten by Lincoln Life.

3. Plaintiff seeks such benefits together with any other disability-related benefits his plan may provide based on the conditions documented in his medical records.

## JURISDICTION

4. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq. The Plan "may be found" within this district.

5. Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

6. Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendant may be found or resides in this District.

## PARTIES

7. Plaintiff Nopazzo Hines, a resident and citizen of Russell County, Alabama, is a participant in the Plan and thus entitled to benefits available thereunder.

8. Defendant Lincoln Life Assurance Company of Boston ("Lincoln Life") is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

9. Lincoln Life is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21).

10. One of Lincoln Life's designated agent for service of process is:

Lincoln Life Assurance Company of Boston
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

11. Lincoln Life is an entity exercising authority or control respecting the management or disposition of Plan assets or the personnel exercising said authority over Plan assets.

12. Lincoln Life is an entity providing services to The Plans at issue.

13. Lincoln Life is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

## THE PLAN

14. The Walmart Inc. long term disability ("LTD") plan is funded entirely by a long-term group insurance policy sold by Lincoln Life, the company which also underwrote this group policy.

15. This group policy was purchased by Plaintiff's employer to confer certain benefits upon Plaintiff and other employees.

16. As a result, these policies qualify as employee welfare benefit plans as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under the Plans as that term is used in 29 U.S.C. § 1132.

17. Under the terms of this LTD Plan providing for certain benefits accruing upon the Plaintiff becoming disabled, Plaintiff is "disabled" as this Plan defines that term, which is as follows:

"Disability" or "Disabled", with respect to Long Term Disability, means:

1. For persons other than truck drivers, pilots, co-pilots, and crewmembers of an aircraft:

    i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

    ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

18. The part of the disability definition applicable to Plaintiff in this case is that which relates to "Own Occupation," which the policy defines as follows:

"Own Occupation", with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is performed at Wal-Mart Stores, Inc.

19. "Material and Substantial Duties" is defined as follows:

"Material and Substantial Duties", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

20. There are no Plan documents made available indicating that Lincoln Life has an enforceable grant of discretionary authority as Plan or Claims Administrator or that any express delegation has occurred for this Plan.

## LINCOLN LIFE'S LIABILITY

21. Plaintiff was a lift operator for Walmart before he stopped working because of pain in his neck and through his left arm.

22. Plaintiff's essential functions included moving freight throughout a large commercial warehouse and stacking or unstacking freight or inventory usually with a forklift, but sometimes manually when situations required it.

5

23.     Plaintiff also had to maintain, clean and inspect equipment used at the warehouse facility.

24.     This is the type of work he has done most of his adult life.

25.     When operating a forklift having a load, one had to be able to turn his or her head backward so the forklift could be driven backwards to transport that load safely. This is because full pallets would obstruct the driver's view going forward.

26.     When loads would shift or fall as they many times did, Plaintiff was expected to move that load manually back onto the pallet, usually by himself, because other drivers had their own loads they were transporting. This often involved weight of up to 100 pounds, but more frequently weights between 25 and 50 pounds.

27.     Plaintiff also had to be acutely aware of his surroundings at all times to avoid accidents with other workers or forklifts operating throughout a busy warehouse.

28.     According to an O*Net analysis, the ability to exert "maximum force" is very important to the performance of this occupation in the national economy.

29.     Plaintiff stopped working in April 2019 when his pain reached a level that he could no longer tolerate.

30. He thereafter submitted a claim for short-term disability benefits under the Walmart, Inc. short-term disability plan, administered by Sedgwick.

31. After an investigation into Plaintiff's condition and functionality, Sedgwick approved Plaintiff's claim, finding him to be disabled under the terms of the Walmart STD Plan.

32. Sedgwick eventually found Plaintiff to be entitled to STD benefits through the maximum period and paid that claim in full.

33. As Plaintiff's claim reached the end of the STD period, it transitioned to the LTD plan where Lincoln Life administered the benefit applying a disability definition that was substantially similar to that found in the STD plan.

34. Despite the similarly in disability definitions and there being no documented improvement in Plaintiff's conditions or functionality, Lincoln Life, in sharp departure from Sedgwick's earlier finding, concluded that Plaintiff was *not* disabled and not entitled to LTD benefits after his STD benefits expired.

35. Specifically, in a letter dated July 14, 2020, Senior LTD Specialist Janice Borner, on behalf of Lincoln Life, informed that her claims unit was terminating and closing Plaintiff's LTD claim after concluding that the records before it – which were the same records before Sedgwick which led to Plaintiff being found disabled under Wal-Mart's short-term disability plan – did not support Plaintiff having any functional limitations.

36. Ms. Borner did not reconcile this conclusion with that of Sedgwick before her based on materially the same disability definition, so there is no explanation why Lincoln Life reached a contrary finding based on exactly the same information.

37. However, Ms. Borner's claim determination appeared to relate to Plaintiff's inability to seek treatment since the expiration of his STD, because of his lack of medical insurance or other ability to pay for such treatment.

38. To address this concern from Lincoln Life, Plaintiff, in connection with his appeal, submitted to an independent medical examination with a physician Board certified in Occupational Medicine on September 11, 2020. That examination confirmed there was no change in Plaintiff's condition and functionality since he was last found disabled for the entire duration of his STD benefit.

39. During his examination, his tolerance for standing and prolonged sitting were observed to be "poor" and he was found to be unable "to exert safely forces greater than 5 pounds for more than 1/3 of the typical workday." Because of his pain, he would not be able to sustain a fulltime work schedule.

40. This in-person assessment contrasted with the review of stale records by a chiropractor on Lincoln Life's behalf.

41. Plaintiff, through counsel, submitted his appeal which included this assessment on October 15, 2020 via facsimile and U.S certified mail, with the mailed

version including a CD with Plaintiff's evidentiary submission with the report from this in-person assessment.

42. In that appeal, Plaintiff argued that Lincoln Life's denial and closure of his LTD claim stood in direct contrast to the full and complete approved of his STD claim which preceded it (and whose record Lincoln Life had at that time), and that this contrary finding, without there being evidence of substantial medical improvement in Plaintiff's functionality, was inherently arbitrary and capricious.

43. Plaintiff also included with that appeal an independent evaluation performed by a physician Board-certified in Occupational Medicine. The report from that evaluation included specific physical findings and measurements together with a conclusion that Plaintiff was unable to return to his occupation with as a forklift operator in a commercial warehouse.

44. For its review of the appeal, Lincoln delegated its review of Plaintiff's medical evidence to Dr. Jordan Klein, a vendor hired to review medical records, not to conduct an in-person examination of the Plaintiff.

45. Dr. Klein opined that Plaintiff's medical records and the foregoing September 11, 2020 IME report, in his view, did not support Plaintiff having any physical limitations, even though the report itself was uncontroverted by any other evidence before him or Lincoln Life at that time.

46. He also acknowledged the limited scope of his review before stating

he could not dispute the IME opinion that Plaintiff's chronic pain and problems especially with his neck prevented him from being able to continue safely working as a forklift operator in a commercial warehouse environment.

47. Despite there being no medical evidence contradicting Plaintiff's claim (medical evidence being actual examination records, as opposed to distillations of those records by a medical records reviewer like Dr. Klein), Lincoln upheld its termination of the claim in its letter dated January 5, 2021, and, worse, elected to misrepresent its own record by denying it had the IME report even though Dr. Klein specifically references having it while addressing specific findings that it included. This appears to be a belated effort to sanitize its claim record for litigation purposes.

48. Lincoln's administration of this claim involves numerous other regulatory and plan breaches and errors, including:

 (a) The failure to maintain adequate claims procedures, or any procedures *at all*, in compliance with Department of Labor regulations;

 (b) The targeting of Plaintiff's claims for denial because ERISA governs;

 (c) The failure by Lincoln Life to take any meaningful measures to insulate its claims process from its inherent conflict under the

Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Plaintiff;

(d) The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of the ability to obtain a full and fair review of his claim;

(e) Taking an adversarial posture against Plaintiff instead of a fiduciary posture by searching for ways to avoid paying part or all his claim;

(f) Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information; and

(g) Failing to accord any weight to Plaintiff's medical providers and other examiners who personally examined the Plaintiff, some on a regular basis.

49. Despite Plaintiff's established disability and entitlement to coverage under the terms of the LTD Plan, Lincoln Life continues to consider Plaintiff not to be "disabled" and unqualified for LTD benefits.

50. As set forth above in connection with Lincoln Life's fiduciary breaches, Lincoln Life's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations to Plaintiff.

11

Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their claims decision.

51. This conflict of interest further calls into question the credibility of Lincoln Life's claims personnel and reviewers who behaved dishonestly and who openly defied Plan terms and department of labor regulations.

52. Lincoln Life considered the applicability of ERISA before making its decision. This presents an additional reason for application of a *de novo* standard to their claim decision.

53. Lincoln Life did not provide Plaintiff with a meaningful opportunity for a full and fair review of this claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1, and instead actively tried to subvert Plaintiff's ability to protect his right to such a review.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nopazzo Hines respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the following relief:

    a. For an order awarding Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon as permitted by law and equitable principles, pursuant to 29 U.S.C. § 1132(a);

b. For a judgment against the Defendant awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1);

c. For an order requiring Defendant to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s); and

d. Such other relief as may be deemed just and proper.

Respectfully submitted,

_____
M. Clayborn Williams (ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

**Plaintiff's Address:**

Nopazzo Hines
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendants' Address:**

Lincoln Life Assurance Company of Boston
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

## REQUEST FOR SERVICE BY CERTIFIED MAIL

Please serve the defendants **Lincoln Life Assurance Company of Boston** by certified mail pursuant to Federal Rules of Civil Procedure 4(e)(1).

*/s/ M. Clayborn Williams*

M. Clayborn Williams (ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

14